May it please the Court, Sarah Kate Heilbrunn for the petitioner Hakan Dincer. In this case, the Board stated that the credibility determination was a close case. However, that simply is not true. This Court must determine whether there is substantial evidence to conclude that the testimony before the immigration judge, which was consistent with the written application, both on direct and cross-examination, can be found lacking because of the petitioner's prior confused testimony before the asylum office. If you look at the big picture here, the immigration judge simply did not believe the credible testimony that was presented in her courtroom. She was confronted with a discrepancy of how he testified before the asylum office and how he testified in court. And in this case, the immigration judge decided that the problems of the asylum office were due to him making up his story and having more opportunity to prepare his case so the testimony he's given is consistent with the information in the written declaration. Counsel, I hate to interrupt your flow of argument. You know how rude the Ninth Circuit judges are. We don't let people just do whatever they want to. In any event, I know your argument would be learned on this point, but I guess I'm going to tell you where I'm struggling. I see a lot of cases like Hallam, Hoxha, Gu, Wakari, for example, where abuse similar or more extensive than what you have here was found not to be persecution. What really troubles me about this case, and I hope you can help me, is that if my understanding is correct, and I get this from AR 247 through 250, it appears that the USCIS has granted asylum to Mr. Dintzer's aunt and uncle, that's Segbe and Iyep Dintzer, on facts that are virtually identical to what we're dealing with in this case. If that's correct, what import, what implication does that have for this case? Is there any concept of estoppel? Is there any concept of you can't possibly treat these differently? How do we deal with that? I believe that when other family members have been granted asylum based on similar facts, that the immigration judge must take that information into consideration. I'm not exactly sure what the term would be if I would call it estoppel, but simply family has been recognized as one of the protected classes, and I think it's certainly a relevant factor if other family members have also been granted asylum under similar circumstances. That would be a little different, wouldn't it, because nobody's persecuting them based upon the fact that they're a member of a family, or is that, in fact, the allegation here? They're all Kurds, I assume, right? Yes. Yes. The grounds, the nexus was Kurdish. The specific incidents where the Petitioner was harmed, he was with his father and he was with his brother. I don't think it was necessarily on account of family membership, but the fact that similarly situated family members who are also Kurdish were persecuted, I do believe is a factor this Court must take into account and which the immigration judge did not take into account. But there's no case law that you're aware of that says in a situation like this that we simply have to credit what was said in the other cases in this case. They obviously believe the other relatives. And they allegedly suffered the same thing. I believe there is case law that is an abuse of discretion to deny family, to deny persecution for, for example, a brother and another brother where they both suffered similar harm. I don't have that case right on the tip of my tongue. Can you send us a 28-J letter on that? I don't know whether my colleagues agree, but I, for one, am really troubled by this. And if you have authority for the effect, to the effect that if you have substantially identical events of immediate family members who have received asylum as a result thereof, I'd like to know that. It would be helpful to me and I think my colleagues as well. I'd be happy to do that, Your Honor. To address your other question about the level of harm that was suffered in this case, the Board found a nexus for four incidents of harm. And I believe two of them in particular can be easily distinguished from Halim, which the Board cited. The first was when the Petitioner was leaving the Hadad party building with his father. He was attacked by about ten people. They threw a wooden crate that had a sharp metal edge at him. It hit him in his jaw. He immediately started to bleed. He was rushed by taxi cab to the hospital. He had to stay overnight. And he had stitches and he still had a scar at the time of the hearing. When that occurred, he was 14 years old. So this is distinguishable in that his age is an important factor that the immigration judge did not consider, and the harm that he suffered, that he had to go to the hospital and receive medical treatment and he still had a scar so many years later at the immigration hearing, I think distinguish this case from those cases where persecution was not found. The other incident was when he was detained and beaten, when he was detained with his brother under false pretenses. He was hit with a nightstick all over his body. When he fell to the ground, he was kicked. And when he was released, he had to stay in bed for three to four days. He had many marks from the beating and the stick marks. Again, he had lasting harm that lasted three to four days, which distinguishes it from the other cases where there was no lasting mark, no further harm beyond simply what happened at the time of the violent incident in those cases. It doesn't seem like you're emphasizing the destruction of his village very much, and I'm wondering why. It seems like that might be a significant factor here too. I believe that is a very significant factor in this case, and I do believe that the Board erred in not considering that as an important incident of past persecution. He testified about it in response to the very first question when he was asked at the asylum office, why are you seeking asylum? So clearly it was a very important incident to him. He was six years old when this occurred, and this Court has noted that age is a very important factor. It certainly was on account of a protected ground. It was an entire village that was destroyed, and he had corroborating evidence, the pictures both before and after that were submitted into the record. So I do believe that that is a significant incident of past persecution and that it was an error for the Board and the immigration judge to not take that into account. Thank you. If the Court has no further questions at this moment, I'll reserve for rebuttal. Okay. Thank you. Good morning. Good morning. May it please the Court. Rebecca Hoffberg Phillips on behalf of the United States Attorney General. I'd like to start off by saying that this particular applicant's case was heard by an asylum officer, was heard by an immigration judge, was heard by the Board, and is now before this Court. And the only thing consistent between all of those different adjudications is the inconsistency in the explanation provided as to why he could not come up with a correct set of dates or a consistent set of dates. Well, let me ask you this, Counsel. I appreciate the fact that those were inconsistent. We're talking about dates, and one would think that would be an important thing. But we've got collateral relatives who were granted asylum. I don't know whether they were inconsistent in their dates or not, but they got asylum. Yes. What are we to make of that? I mean, there's an inconsistency. The question is, is there enough evidence that he put on that counteracts that? What do we do with that? Here's the problem with trying to use his relatives' applications in this case. He never proposed before the immigration judge that those grants of applications would be relevant to his case. And I'd like to direct the Court to the record around pages 227 to 40, because that's approximately when the immigration judge first found out about the grants of asylum to the family members. Here's what happened. When the family members were first discussed as to how they got status, the Petitioner and his counsel talked about how they received it through the diversity lottery and not as an asylee. And so the immigration judge actually did not know that they were granted asylum until his counsel submitted evidence of the asylum grant for the purpose of showing his address at his relatives' house. And I'd like to make it very clear that when counsel brought in the grants of asylum on pages 227 and 234, he made it very clear he was offering them only to show the address, not for the relevance of those asylum applications. Okay. So they didn't have a very good lawyer and he wasn't very bright. What does that have to do with what we're supposed to do with that in this case? We know about the fact that these folks were granted asylum. And does the government contend that what they suffered was different and materially different than what this Petitioner suffered? Well, it's not about what the government has contended in that respect. Petitioner has not contended that they've suffered anything similar. If you look at the events, and I'm saying even if you take them as true, which the government submits that they are not, but if you take them as true, not one of the two relatives who were granted asylum, and this is what the DHS attorney brought up to the immigration judge in closing, because Petitioner's counsel asked at the last minute, can I have a continuance to get this evidence about the other grants of asylum into play so we can see if there's any comparisons to be made? And the DHS attorney pointed out, well, you can't do that. Well, setting aside the I.J.'s obligation to weigh this evidence, because it wasn't argued, has the government taken a look at the situation, the fact that relatives have received the same relief? Petitioners — And determined whether it's appropriate to exercise its prosecutorial discretion in that regard? Well, two issues there. One is in terms of looking into the other relatives' applications, Petitioner's counsel, both at the I.J. level, who was part of the same firm at the board level and now has different counsel before this Court, none of them have made a case that they're — But the question is whether the government has looked into it on its own. The government has not looked into that because it was specifically said before the immigration judge that they would not have relevance on his claims. The counsel before the immigration judge said, we're not trying to influence his claim. Who said that? The government said that, or did they say that? His counsel before the immigration judge specifically went out of his way to say, we're not making the contention that those claims bear on this one. But is that because they hadn't yet had a chance to look into them? Well, I can't be sure what his counsel did or did not do. What his counsel had said before the immigration judge was that it was literally by accident that the immigration judge found out that these claims had been granted because, like I said, when he submitted that evidence, it was to show an address. And then — Counsel, forgive me. I thought a minute ago you said that the petitioner's counsel said, can I have a continuance so I can find out more what happened in these other cases? It sounds like he was surprised, or she. I don't know who was before the IJ. But that seems at odds with what I understand you to just be saying to us now. Right. Well, so what happened was he then said at the last minute, after all of that exchange, he said, well, can I have a continuance? And the immigration — and then, so what happened was, and I'm referring the Court to, this is around, as I mentioned, pages 239. That's where he said, I renew my motion to continue. And then he said, the DHS attorney pointed out, well, he hasn't shown how this would possibly be relevant. What do you know about these claims that would make it relevant? And his counsel, you know, said, well, they were in the U.S. and they were, you know, they were living in Turkey. And the judge said to him, and this is on page 241, you have no idea whether any of them were percipient witnesses. And he said, no, Your Honor. And the judge said, well, you've had ample opportunity to present this case. Well, basically, the issue came up either through fault of the counsel or whatever. There was no time given. We don't know how relevant it is. But the fact is, these family members, at least as I understand it from the record, were granted asylum. And it sounds like the counsel for your, well, for the Petitioner, did not know that asylum had been granted before. Is that correct? It seems like he would, he was the one who presented the evidence that asylum had been granted. So he must have known that. Right. And so he said, I'm not trying to influence the Court with these other people's cases. Can any attorney say that? That's what he said. It's in the record. He said, I'm not trying to sway the Court based on those cases. I'm just trying to show the address where Petitioner was living, because he had a document with an asylum grant that showed his relative's address, because there had been some question about where the Respondent had been living. I believe that's page --- I'm sorry. Go ahead. Yes. Page 240 to 241, Mr. Ogie says, but they were granted asylum, and they were living closely to him in Turkey, and wouldn't that show what actually happened to him, the hardship that they went through, the persecution that they were subject to? It could be relevant to this case. So maybe the attorney had said something earlier that was different, but the attorney is trying to fix it and asking for a continuance. Isn't that what's going on here at 240 to 241? I see, yes, that is exactly what he's saying. And then what the immigration judge came back with, I think the fact is that he wasn't showing, he wasn't making any prima facie showing, because his specific claims, as I mentioned, if true, they would not have involved those individuals. He's not making, for example, a pattern of practice persecution claim. He's also not making a family member particular social group claim. What he's making is an individualized claim for asylum, and the players in his story for asylum involve him, his father, and his brother. Now, his father and his brother still live in Turkey, which was actually part of the basis for why the immigration judge ultimately found that he wouldn't have a well-founded fear of persecution because of his brother still living there. He still goes to school there, and the ability to relocate and all of that. So basically, if he had shown his father or brother had been granted asylum, that would have been something relevant to his particular story about why he should be granted asylum. His relatives had absolutely no part of his story for asylum. Kagan Did the aunt and uncle live in the village that was destroyed? That is not clear. I mean, none of that evidence was presented about where they were living, where they might have been in proximity, or even if the years of what happened to them would necessarily coincide with him. Now, to the extent he's never raised anything, and not even before this Court in his opening brief, did he raise anything about trying to bring in the claims for his relatives as relevant to his own. And so the Court should find that that was not exhausted and that it has been waived. To the extent Your Honor brought up PD, to date his counsel has not sought PD, and you know, because asylum seekers can ultimately get a green card, if asylum is granted, it could make sense that they would want to pursue their claim. However, he has not sought PD up until this point. But I'd like to go back to the question of whether or not the government is considering that on its own. Well, the government is absolutely reviewing all of the cases at this point and still in the process of reviewing in terms of the executive action. We are in the process of reviewing cases and Petitioner's Counsel. But what about this case in particular? You're still in process, or you've already done the evaluation in light of the recent executive order for this particular case? To our knowledge, Petitioner's Counsel wanted to move forward with this case before this Court, to, you know, to, and it's understandable, as I mentioned, we, you know, this is the situation where Petitioner's Counsel can take steps if that is something that they would like to pursue. The government can't, as I understand it from a session that we had with Juan Osuna and the rest of the folks, is that if the counsel for a petitioner want to move forward, the government can't stop that, that's their right, is that correct? They can apply. It's a separate act. If they qualify for things, they can't. What I mean is if they want to move forward with their case, you can't pull it that way. Exactly, Your Honor. For the reason I mentioned, I mean, you know, a lot of people do want to pursue their cases because they think that an ultimate outcome from asylum will give them the status that they want, and that's understandable. But the government has no control to stop them from pursuing their claim. But are you saying that the government would have offered or has offered prosecutorial discretion, but they turned it down because they want to pursue the case, or are you saying that that hasn't happened, that discussion hasn't happened yet? Our office reached out to counsel about whether they wanted to pursue this case. And we were told to show up for argument and pursue this case. So that's why I'm here. So, but, you know, PD is definitely, it's out there. And in general, we're reviewing cases. In this case in particular, there was a, you know, discussion, and we're here today. So, yeah. So from your government's perspective, you have reached out, you have offered to discuss whether prosecutorial discretion is appropriate in this case, and you were turned down. Yes. I'm just not sure how much of these types of discussions. No, no, I understand. Yes. Well, we're all at sea on this because this is very new. We don't really have much of it to go on either. So we're learning along with you. Yes. And absolutely, it's the government's prerogative to conduct that evaluation. But in light of the recency of the changes, it's good to know that a discussion has been had between counsel. Because this was set for argument well before we had the meeting. And so we wanted to ensure that it didn't fall through the cracks in some fashion. Right. But that's fine. Those discussions are, of course, appropriately left to the parties. Right. Yes. Okay. Well, thank you very much. Thank you, Your Honor. We'll hear a rebuttal. So you know what our first question is going to be, don't you? I wouldn't presume. Yeah. Do you acknowledge that the government did reach out and ask whether you want to talk about prosecutorial discretion? Yes, Your Honor. The government did reach out to ask about prosecutorial discretion. I spoke with my client about this case. And it is, as the government attorney stated, prosecutorial discretion gets somebody a work authorization and temporary status here in the United States with no sense of permanency. I mean, that's fine. The bottom line is you've elected to go forward on the merits of the case. That is correct, Your Honor. Okay. Very good. I would like to say, just as long as we're talking, the government has made what is, as a matter of law, a very standard and appropriate statement, which is that on the issues about the relatives, this issue isn't exhausted. They're right, aren't they? I don't believe they are right, Your Honor, because I believe that the question is whether or not this petitioner has suffered past persecution and various incidents of past persecution and what this court can consider. The pages in the record already cited show that the counsel below did argue, well, they're all Kurds. And the particular social group noted on the application was Kurdish. So these are related claims. I think that there is a due process denial to not grant that continuity. But the problem really is the substantial evidence review standard. I think the facts supporting a claim for asylum are compelling, but there are plenty of facts that are even more compelling in which we have actually denied the petition. And so it's hard. I think you've got a tough asylum claim, and this claim is substantially improved by the issues that Judge Smith raised, which really aren't in the record. So we'd have to speculate to a large extent. We don't have the record of the relatives before us. That's really the problem. So to what extent does it matter? How much should the IJ have taken into account? We don't have any facts to conduct that analysis. The request to present that evidence was made, and the immigration judge denied it. Kagan. Was that appealed to the BIA then? The this goes back to the question of exhaustion and what does exhaustion require. When looking at exhaustion, I think that the Court is required to take a step back. The case law is clear that you are not clear that the Court doesn't look at specific arguments that are made, but rather whether the general issue has been raised. In this case, the issue is did the Petitioner suffer past persecution? And so did the Court review that question, was past persecution suffered? And did the Court review the evidence in the record as to whether past persecution was suffered, which included statements that similar family members who were also Kurdish suffered past persecution? And I think particularly important is that the village was destroyed and there was corroborating evidence about that, which would make family members who likely lived at the same time would make their claims relative. The immigration judge focused on whether or not they were percipient witnesses to the harm suffered by the Petitioner. But I think that the larger question as to the persecution suffered by, on account of being Kurdish, and in particular the incident when his village was destroyed, was before this Court. That was an issue reviewed by the immigration judge. That's an issue in the record that was reviewed by the Board, and therefore, it's an issue. The specific arguments do not need to be made, and that is, that's made clear by Murano Morante, I believe. Any other questions by my colleagues? We thank you both for the argument in this interesting and troubling case. Thank you. The case just argued is submitted.
judges: Smith, Nguyen, Friedland